EXCELSIOR MANUFACTURING CO. *v.* OWENS.

Opinion delivered March 10, 1894.

1. *Evidence—Unrecorded deed of assignment.*

A deed of assignment which has not been acknowledged or recorded may be introduced in evidence in a contest between the assignee and an attaching creditor concerning possession of chattels conveyed by it.

2. *Assignment for benefit of creditors—Fraud.*

Where a vendor of merchandise affirms the sale by suing to collect his debt, he cannot attack the validity of an assignment executed by his vendee upon the ground that the latter had made false representations as to his financial standing upon the faith of which the goods were sold, that the goods so sold were among the assigned assets, and that the deed of

assignment directed the proceeds of the sale of such assets to be paid to preferred creditors other than himself.

3.  *Conflicting presumptions—Rule.*

In the case of conflicting presumtions, the presumption of innocence is stronger than the presumption of payment. As, where an insolvent merchant, after assigning all of his property, except his exemptions, to secure a note to his sister-in-law for a sum largely exceeding his exemptions, was shown to have subsequently had the note in his possession after its maturity, and it does not appear that, after the assignment, he had acquired means to pay the note, the presumption is, not that he fraudulently withheld assets enough to pay the note, but that his possession of it was consistent with good faith in the execution of the assignment.

4.  *Interplea—Right to open and conclude.*

On the trial of an interplea in an attachment suit the burden of proof is upon the interpleader, and he is entitled to open and conclude the argument.

Appeal from Sebastian Circuit Court, Greenwood District.

EDGAR E. BRYANT, Judge.

STATEMENT BY THE COURT.

Appellant sued W. H. Owens on notes due and not due, aggregating $1,385.96, and attached a stock of hardware as his property. Appellee Kendall filed an interplea, claiming this property under an assignment from Owens. Upon this issue was joined. The cause was submitted to a jury upon evidence substantially as follows :

Appellee introduced the assignment ; proved its execution, the taking inventory, making bond, possession ; and rested. Appellants proved the insolvency of appellee ; that, when he began business, January, 1890, he borrowed one thousand dollars from his sister-in-law, and gave her a note due January, 1891. He had paid only the interest for one year, was to pay interest and keep principal as long as he desired. She was preferred in the assignment. Appellee was correspondent for Dun's

agency; in June, 1891, made statement of his financial condition, in which he largely overestimated assets, and underestimated liabilities. About three weeks before assigning, he received from appellant a car-load of stoves, which were not paid for, were nearly all on hand at the time of the assignment, and were included in it. About this time he represented to an attorney, having claims against him for collection, that his liabilities were some two thousand five hundred dollars less than they really were. All his property was transferred by the assignment, except such as was named therein as exempt. Reports made to Dun's agency were used by wholesale merchants as a basis of credit. One of the attaching creditors, whose suit on attachment was by agreement to abide the decision on this interplea, had sold him goods on the rating which Dun's agency gave him, which was between two and four thousand dollars. Some time after the assignment, one of the preferred creditors received the note given his sister-in-law in a letter from Owens. The verdict was for appellee; motion to set it aside overruled; judgment rendered, and this appeal perfected, asking its reversal for the following alleged errors :

First. In allowing the assignment to be read in evidence without acknowledgment or registration, when it purported to convey real estate.

Second. In instructing the jury that the assignment was valid on its face.

Third. In instructions, two, three, four, five, six, seven, ten, each, as modified.

Fourth. In refusing instructions one, two, three, four, each, asked by plaintiff.

Fifth. In allowing interpleader the opening and closing argument to the jury.

Sixth. In verbally explaining the written instructions after argument of the case.

*Sandels and Hill* for appellant.    *F. P. Winchester*
of counsel.

1.  Plaintiff was entitled to open and conclude the
argument.    Mansf. Dig. sec. 5131, 2871; 20 S. W.
1083; 41 N. W. 254; 43 Id. 108; Bump. Fr. Conv. p.
365; 29 Ark. 151.

2.  It was error to admit the assignment to be in-
troduced in evidence.    It was not attested by witnesses
nor acknowledged.    Mansf. Dig. sec. 657; Devlin on
Deeds, secs. 66, 465.

3.  The assignment is not good on its face.    54 Ark.
471; 53 *id.* 88; Mansf. Dig. sec. 305.

4.  The court erred in orally explaining its instruc-
tions.    Const., art. 7, sec. 23; Mansf. Dig. sec. 5131,
subd. 5; 51 Ark. 185; 47 *Id.* 407; 18 S. W. Rep. 121;
Thomps. Trials, sec. 2377.

5.  There is error in instructions 11 and 12, and in
refusing 1 and 3 on the question of the Eliza Turpin
preference.    8 Ark. 109; 11 *id.* 249; 2 Herm. Estop. p.
873; *Ib.* p. 893; Bump, Fr. Conv. p. 182; 63 Hun, (N.
Y.) 267.    It was a fraud on the rights of creditors to
prefor Miss Turpin.    Bump, Fr. Conv. pp. 383-4.

6.  The refusal to give instruction 4 asked by ap-
pellants was palpable error.    47 Ark. 394; Thompson,
Trials, sec. 2317.    Speer received the note from Owens
after the assignment.    It was then nearly a year past
due.    Owens' possession of it meant, *prima facie,* that it
had been paid.    If paid before the assignment, then it
was a preference of a fictitious debt, and avoided the as-
signment,    40 N. Y. 383; 20 S. W. 719.

7.  It was error to refuse instruction No. 2 asked
by appellant.    The false statements by Owens of his
financial condition, made knowingly as a basis of credit,
whereby he was enabled to buy goods, a material part
of which was among the assigned assets, were fraud-
ulent, as to the creditors misled.    47 Ark. 253; 52 *id.*

30; 51 Iowa, 663; 13 S. E. 509; 30 Mo. App. 2; 11 So. Rep. 186; 4 Denio, (N. Y.) 217.

*Humphy & Warner* for appellee.

1. The *onus* was on the interpleader, and he had the opening and closing. Mansf. Dig. secs. 356–358; 11 Iowa, 516; 7 Pick. 99; 8 Blackf. 194; 35 Ind. 31; 25 N. H. 478; 5 Ark. 141; 32 *id.* 470; Thomps. Trials, secs. 228–9.

2. Deeds of assignment are not required to be acknowledged. Mansf. Dig. ch. 8; 25 Ark. 562; 38 *id.* 181; 40 *id.* 237; 16 *id.* 543.

3. The court did not *orally* explain its instructions. It *began* to do so, but, upon objection, *desisted.*

4. There is no error in the instructions complained of. 11 Ark. *Prater* v. *Frazier;* 2 Herm. Est. p. 893; Bump, Fr. Conv., p. 384; 52 *id.* 125; 50 *id.* 382; 20 Ill. 485; 52 Ill. 420; 2 Ark. 143; 24 Barb. 120; 27 Tex. 438; 6 B. Mon. 256; 88 Pa. St. 173; 9 N. W. Rep. 550; 51 N. Y. 174.

WOOD, J., (after stating the facts.)

**1. Unrecorded deed admissible in evidence, when.** 1. The deed of assignment was properly admitted in evidence. Appellant is not claiming by priority of attachment over the assignment, and the question of notice has no place in the case. Assignments are not required to be recorded as a prerequisite to their admissibility in evidence. The only purpose to be effected by their registration in any case would be to give notice. Besides, the property involved in this controversy is a *stock of hardware* as appears from the judgment.

2. The court told the jury "the assignment was good on its face."

The deed contains the following clause, which appellant contends invalidates it, to-wit: "That he, the said grantee, shall make an inventory of said property and give bond in the manner provided by the laws of

Arkansas governing in cases of assignment for the benefit of creditors, and, after first having given bond, he shall take possession of said property and dispose of the same in the time and manner provided by law." No ingenious transposition of words or artifices of construction should be indulged in by courts in order to give meaning to words in an instrument which in themselves are unambiguous. Such is the clause above, when the words are read in the order in which they are placed in the sentence, and are given their logical, or even grammatical, construction. The case of *Lincoln* v. *Field*, 54 Ark. 471, is not at all analogous. There the direction to the assignee was to "*forthwith*" take possession, and nothing was contained in the deed to indicate that the taking possession was not the *first thing to be done*, as plainly implied by the word "*forthwith.*" The language of the above clause as unequivocally expresses (taking the words in the connection used) that the taking an inventory was the first thing to be done, under the direction of this assignment; then the making of the bond, and after that the taking possession. The words in the deed of assignment follow the order prescribed by the statute, in expressing the respective duties to be performed by the assignee before possession is taken. The taking of the inventory properly precedes the making of the bond, because it furnishes the estimate for the amount of the bond. The court did right in pronouncing this assignment good on its face.

3. The third and fourth grounds relate to alleged errors in modifying, giving and refusing instructions.

2. When assignment not avoided for fraud.

After telling the jury the assignment was good on its face, the court proceeded in a lengthy charge to declare the law applicable to the facts in evidence, as to what might be considered, and what was really necessary, in order to avoid such an assignment. We epitomize it as follows : (1.) Material part (meaning a por-

tion that is not insignificant) must not be withheld. (2.) Right to prefer one just debt over another. (3.) The fraud that will vitiate an assignment must be in the assignment itself. (4.) Conduct of assignor in making purchases, false representations, etc., are all matters proper to be considered in determining what the real intent was in making the assignment, the real question being, was the assignment itself executed with the fraudulent purpose to cheat, hinder, or delay any creditor? If so, void; if not, good, notwithstanding prior or subsequent dishonest conduct. (5.) A debtor has the right to prefer his attorneys for drafting the assignment. (6.) The preference of a sham or pretended debt is a fraud which vitiates the assignment. (7.) A gift is not a debt; to advance a party money to be repaid, even at the pleasure of the debtor, is not a gift.

The first and third instructions asked by appellant related to the alleged debt of assignor to his sister-in-law, which appellant claimed was a simulated debt, or gift; or, if a real debt, that same had been paid. It was not error to refuse these, as the court had already sufficiently charged upon that point.

In instruction numbered two, refused, the appellant asked the court to charge "that, if defendant Owens made false representations to Dun's Agency, and goods were sold him upon the faith of such representations, and the goods so sold were among the assigned assets, and the assignment directed the proceeds of the sale of assigned assets to other creditors than the ones misled, this would be a fraud which would vitate the assignment."

This was an action of debt, with the provisional remedy for its enforcement. Appellant was not seeking to rescind the contract, nor to recover the specific property, but, on the contrary, was suing upon the notes.

The instruction was not proper in an action of this kind. The title to the assigned property being in the assignor, he had the right to include it in an assignment for the benefit of any creditors he chose to prefer. But this conduct, like any other fact, was proper to be considered by the jury in arriving at the intent of the assignor in making the assignment, as the court told them in other instructions.

The court refused to instruct "that possession of a promissory note after maturity by the maker is *prima facie* evidence of payment, and this presumption must stand until overcome by competent testimony."

3. Rule as to conflicting presumptions.

The possession of a note by the maker after maturity is *prima facie* evidence of payment. This presumption is based upon the fact that it is the common practice of persons owning notes not to deliver them to the maker except on payment, as was held by this court in *Hollenberg* v. *Lane*, 47 Ark. 394. That presumption may be rebutted by a fact inconsistent with it. The deed of assignment conveys to the assignee all the property of the assignor except his exemptions. The deed is valid on its face. It is presumed to have been executed in good faith until the contrary is made to appear. Now, can the possession of a note soon after the deed was executed raise the presumption of payment, where the amount of it is larger than the value of the property reserved by the assignor, unless it be shown that the assignor, subsequent to the execution of the deed, acquired the means to pay it? We think not, where it is shown, as in this case, that all of his property except his exemptions went into the assignment. To indulge such a presumption would be equivalent to presuming that the assignor withheld assets which he pretended to convey, and that the deed was fraudulent. By sec. 1649, Mansf. Dig., it is made a misdemeanor to make a fraudulent assignment. Hence, it would also be tanta-

mount to presuming that the assignor was guilty of a crime. Thus, we would be allowing the presumption of innocence and good faith to be overcome by the presumption of payment, while the reverse is the law. Lawson on Presumptive Evidence, 582. The possession of the note is consistent with good faith in the execution of the assignment. His sister-in-law doubtless believed the assignor honest. She was willing to trust him. He preferred her, and it was consistent with good faith for her to trust him with the note for the purpose of collecting it from the assignee. In view of these facts, the court did not err in refusing the instruction. The fact was given to the jury to consider with all the other facts.

4. Right of interpleader to open and conclude.

5. The burden of proof was upon the interpleader, and he was entitled to open and conclude the argument. Had no evidence been introduced in this case on either side, appellee would have been defeated.* Mansf. Dig. sec. 2871. The parties seem to have gone to trial upon the general issue on the interplea. Appellee, according to the records, was put to his proofs, and required to introduce the deed of assignment, and to prove that its requirements had been met by assignee taking inventory, filing bond, and going into possession. Appellant then introduced its proof, and "after the conclusion of the testimony, and before the argument began," appellant's counsel admitted that all the necessary steps had been taken under the assignment. This had already been proven by appellee, and required no admission, as there was no evidence to contradict or rebut it.

6. Sec. 23, art. 7, of the constitution provides: "And in jury trials (circuit judges) shall reduce their charge or instructions to writing on the request of either party." No such request was made to the judge in this case. Nor does it appear from the record that the judge

* Compare *Norton* v. *McNutt*, 55 Ark. 59 (Rep.).

made any oral explanations of his instructions. The record recites that he "began," and "immediately desisted" upon objection being made by counsel. There was no error in this.

No question is made as to the sufficiency of the evidence to support the verdict, and, finding no error of law in the proceedings, the judgment of the Sebastian circuit court is affirmed.